## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

FREDDIE L. GOODE,                      )
                                       )
          Plaintiff,              )
                                       )
v.                                     )       Civil Action No. 3:14cv281–HEH
                                       )
CENTRAL VIRGINIA                       )
LEGAL AID SOCIETY,                     )
                                       )
          Defendant.             )

### MEMORANDUM OPINION
### (Granting Motion to Dismiss)

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 15) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated herein, the Motion to Dismiss will be granted, and the case will be dismissed without prejudice.

## I. BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes Plaintiff's well-pleaded allegations to be true, and views all facts in the light most favorable to him. *T.G. Slater & Son v. Donald P. & Patricia A. Brennan, LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  Viewed through this lens, the facts are as follows.

Plaintiff, Freddie L. Goode ("Goode"), an African-American male, worked for Defendant, Central Virginia Legal Aid Society ("CVLAS"), from 1988 until his allegedly wrongful termination on March 31, 2013.  (Compl. ¶¶ 1-2, 7, 10.)  CVLAS is a 501(c)(3)

organization. (*Id.* ¶ 3.)  Goode started as a volunteer at CVLAS, and progressed to other positions, which included paralegal, staff attorney, senior staff attorney, managing attorney, and most recently, Senior Managing Attorney.  (*Id.* ¶¶ 7-9.)  At the time of his termination, Goode was seventy-two (72) years old, earned an annual salary of $85,000, and was one of nine attorneys working for CVLAS.  (*Id.* ¶¶ 2, 11-12.)

In his work as Senior Managing Attorney, Goode's duties included:  representing and advising clients on civil matters; overseeing the Social Security, elder law, and public benefits units; and supervising the volunteer lawyer pro bono hotline.  (*Id.* ¶¶ 13, 31.)  Goode contends that during his tenure at CVLAS, he always met or exceeded performance expectations.  (*Id.* ¶ 18.)  Goode worked out of CVLAS' Richmond office under Stephen Dickinson, a Caucasian male and the Executive Director of CVLAS.  (*Id.* ¶ 14.)

On March 11, 2013, the CVLAS Board of Directors ("Board") allegedly met and discussed potential restructuring of its attorney workforce in light of a loss in government funding.  (*Id.* ¶¶ 20-21.)  Goode heard that the Board discussed all CVLAS employees at this meeting and that his "veteran and other benefits" were mentioned as reasons Goode would be less affected than others by the reorganization.  (*Id.* ¶¶ 21-22.)  Subsequently, CVLAS terminated Goode and four other African-American employees over the age of forty (40).  (*Id.* ¶ 23.)  Goode does not state the gender, exact age, or position of the other terminated employees, but he was the oldest CVLAS employee at the time.  (*Id.* ¶ 24.)

Prior to his termination, Goode suggested to Dickinson alternative methods to reduce spending that would have allowed Goode to maintain his employment status.  (*Id.*

2

¶¶ 27-28.) Goode's suggestions included increasing employee contributions to health insurance premiums, requiring managing employees in Richmond to pay their own parking fees, and cutting annual salaries that exceeded $65,000 by ten percent. (*Id.*) Dickinson allegedly rejected these suggestions, because they would not sufficiently reduce costs and he had promised employees raises. (*Id.* ¶ 29.) Dickinson indicated that two female Caucasian attorneys were single parents who would be affected by Goode's proposed salary reduction. (*Id.* ¶ 30.) As an alternative to termination, Dickinson offered Goode a position in which he would continue to supervise the volunteer lawyer pro bono hotline. (*Id.* ¶¶ 13, 31.) Goode does not explain how he responded to this offer. On April 8, 2013, eight days after terminating Goode, CVLAS offered him a severance package which Goode rejected as "meager" and an inadequate reflection of his work history. (*Id.* ¶¶ 34-36.)

Explaining its decision to terminate Goode and eliminate his position, CVLAS[1] cited budget cuts and a decision to stop litigating Social Security cases, which was one of Goode's responsibilities. (*Id.* ¶¶ 37, 40.) Goode alleges these explanations were pretext for CVLAS' actual reasons for his termination—race, sex, and age discrimination. (*Id.* ¶ 37.) Though Goode was terminated, others remained employed by CVLAS. (*Id.* ¶¶ 26, 39, 45-46.)

Martin Wegbreit, the Senior Managing Attorney in charge of litigation services, was Caucasian, "substantially younger" than Goode, and his salary was higher. (*Id.* ¶¶

---

[1] The reasons given for Goode's termination are not credited to any one person in the Complaint. Instead, Goode refers to "CVLAS" or to "CVLAS, through its members, supervisors, employees and agents." (Compl. ¶¶ 37, 40, 44-48, 52-53, 56-57.)

15-17.)  Goode alleges that he and Wegbreit were "similarly situated . . . in terms of workload and responsibility." (*Id.* ¶ 15.)  According to the Complaint, CVLAS retained Wegbreit in the same capacity and at the same salary as before Goode's termination. (*Id.* ¶ 26.)  There is no indication of Wegbreit's exact age, salary, or job description beyond that he was "in charge of litigation services." (*Id.* ¶ 15.)

Christianne Queiroz, a "much younger" female Latina attorney, also continued working for CVLAS. (*Id.* ¶¶ 39, 46.)  Queiroz's employment status changed to part-time, but her salary allegedly remained the same after Goode's termination. (*Id.*)  The Complaint provides no information regarding Queiroz's exact age, salary, or job description beyond "attorney." (*Id.* ¶ 46.)

In response to these events, Goode filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging race, sex, and age discrimination. (*Id.* ¶ 6.)  After receiving a "Notice of Right to Sue" letter from the EEOC, Goode brought this action against CVLAS. (*Id.*)  He asserts three separate counts of discriminatory termination based on race (Counts I and II) and age (Count III) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII"), 42 U.S.C. § 1981, and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA").[2]  CVLAS moves to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6).

---

[2] In his introduction, Goode also alleges employment discrimination in violation of 42 U.S.C. § 1983.  However, he does not assert a separate count for the alleged Section 1983 violation nor does he reference the statute in the remainder of the Complaint.  The same is true for his claim of sex discrimination. (Compl. at 1.)  Even if Goode pled a Section 1983 claim, the Fourth Circuit has held that Section 1983 has a state-action requirement, and no factual allegations purport that

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*  In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater*, 385 F.3d at 841 (citation omitted).  Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As a general proposition, "[p]leadings must be construed to do justice." Fed. R. Civ. P. 8(d).  At the same time, courts recognize that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim." *Atkins v. City of Chicago*,

---

CVLAS was a state actor. *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999) (citations omitted). Accordingly, the Court need not address the Section 1983 or sex discrimination claims.

631 F.3d 823, 832 (7th Cir. 2011) (Posner, J.) (citing *Hecker v. Deere & Co.*, 556 F.3d

575, 588 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008);

*EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007); *Orthmann v.*

*Apple River Campground*, 757 F.2d 909, 915 (7th Cir. 1985); and *Trudeau v. FTC*, 456

F.3d 178, 193 (D.C. Cir. 2006)).

### III. DISCUSSION

The Complaint fails to state a tenable claim for relief. Goode's unlawful

discrimination claims (1) do not offer direct evidence of discrimination and (2) fail to

state an actionable discrimination claim.

Goode asserts three counts of discrimination: two based on race (Counts I & II)

and one based on age (Count III). (Compl. at 7-9.) The Court will address the claims in

that order.

**A.      Race Discrimination Claims**

Because the requirements to establish race discrimination claims are identical in

both Title VII and Section 1981, the same analytical framework will apply to Counts I

and II. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

To establish a claim of race discrimination under Title VII, a plaintiff may either

follow the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802 (1973), or offer direct evidence of race discrimination. *Swierkiewicz v. Sorema*

*N.A.*, 534 U.S. 506, 511-12 (2002); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190

(4th Cir. 2010) (citing *Swierkiewicz*, 534 U.S. at 510-15). Because he is not obligated to

follow the *McDonnell Douglas* burden-shifting approach, he may plead his case simply

6

by alleging that "he had been terminated on account of his [race]" and by "detail[ing] the events leading to his termination, provid[ing] relevant dates, and includ[ing] the [races] of at least some of the relevant persons involved with his termination." *Swierkiewicz*, 534 U.S. at 514. At a minimum, a plaintiff must allege facts showing that he was "discharge[d] . . . because of [his] race." *Coleman*, 626 F.3d at 190 (citing 42 U.S.C. § 2000e-2). But in doing so, the facts must "plausibly" support allegations of discrimination, and cannot rely on mere "conclusory" allegations. *Id.* at 190-91.

Alternatively, a plaintiff may follow the *McDonnell Douglas* framework and allege the elements of a *prima facie* case, which are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *Id.* (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)). If factual allegations fail to support even one element, the claim fails. *See Coleman*, 626 F.3d at 190-91.

Under either approach, Goode's Complaint fails to state a claim. Goode alleges that he was terminated after the Board met to discuss reorganizing CVLAS due to a loss of funding. (Compl. ¶¶ 20-21, 23.) While he alleges unlawful termination, Goode acknowledges that CVLAS faced financial constraints and decided to stop representing clients in Social Security matters. (*Id.* ¶¶ 21, 28-29, 40-41.) He simply disagrees with CVLAS' decisions. (*Id.* ¶¶ 27-28, 41.) By admitting that CVLAS' reasons for his termination were at least partially true, Goode essentially pleads himself out of court. *Atkins*, 631 F.3d at 832. In conclusory fashion only, he associates his termination with unlawful discrimination. (*See, e.g., Id.* ¶ 37.) No factual allegations support this

conclusion. Goode asserts several of his own beliefs or feelings with regard to the circumstances surrounding his termination. (*Id.* ¶¶ 33, 35, 37.) Conclusory statements of personal beliefs are not accepted as factual allegations. *See Iqbal*, 556 U.S. at 678; *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000) (citations omitted).

Because Goode does not offer direct evidence of racial discrimination, his factual allegations are analyzed under the *McDonnell Douglas* approach. The Court finds, and CVLAS does not dispute, that Goode is a member of a protected class and his termination clearly qualifies as adverse employment action. *See Boone v. Goldin*, 178 F. 3d 253, 255-56 (4th Cir. 1999) (including "firing" and "discharging" in the definition of adverse employment action) (citations omitted). Goode's satisfactory job performance and CVLAS' different treatment of similarly situated employees outside the protected class remain in dispute and require further analysis.

## 1. Satisfactory Job Performance

Goode lists various positions he held over nearly 25 years while employed at CVLAS, and he details his duties at the time of his termination. (Compl. ¶¶ 9, 13.) While these facts are descriptions of his work history and associated duties and responsibilities, they fail to support a tenable inference, positive or negative, as to the quality of Goode's job performance when he was terminated. In April 2009, the Virginia State Bar awarded Goode its Legal Aid Lawyer of the Year Award. (Compl. ¶ 19.) Henry McLaughlin, III, Director of CVLAS at that time, acknowledged Goode's "'extraordinary record of innovation in recruitment and supervision of volunteers'" in

connection with the award. (*Id.*) Taken together, these allegations give rise to the inference that Goode performed his job satisfactorily in and leading up to early 2009. However, Goode's termination occurred nearly four years later, and the Complaint offers no indication of his performance after 2009. *See Twombly*, 550 U.S. at 570 (dismissing claims in which "[p]laintiffs . . . have not nudged their claims across the line from conceivable to plausible."). The Complaint provides no information concerning subsequent job evaluations, awards, or recognition given to him after 2009. There is simply no plausible inference to be drawn about the quality of Goode's performance in March 2013 from the award he received or comments made by a previous CVLAS Executive Director in 2009.

In conclusory fashion, Goode alleges that he "has always met or exceeded the performance expectations of CVLAS." (Compl. ¶ 18.) This recitation is insufficient to show that CVLAS was satisfied with Goode's job performance at the time of his termination. *See Twombly*, 550 U.S. at 555. Merely bolstering the statement with the word "exceeded" does not transform the conclusory allegation into a plausible fact.

### 2. Different Treatment of Similarly Situated Employees

Even if Goode had established his satisfactory job performance at the time of his termination, he fails to establish the final element of a *prima facie* race discrimination case. Goode must plausibly show that he received different treatment than similarly situated employees outside the protected class. *Coleman*, 626 F.3d at 190-91 (citation omitted). Specifically, this requires factual allegations that CVLAS replaced Goode with someone outside the protected class with comparable qualifications or that after his

9

termination, Goode's position remained open to similarly qualified applicants. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998) (citing *Blistein v. St. Johns College,* 74 F.3d 1459, 1467-68 (4th Cir. 1996); *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1228 (4th Cir. 1998)). To show another employee was similarly situated to him, and thus an appropriate comparator, Goode must "'show that [he is] similar in all relevant respects to [his] comparator.'" *Kelley v. United Parcel Serv., Inc.*, 528 F. App'x 285, 286 (4th Cir. 2013) (quoting *Haywood v. Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010) (unpublished) (internal quotations and citations omitted)).

However, no allegations suggest that CVLAS replaced Goode. In fact, Goode admits "CVLAS . . . eliminated [his] position." (Compl. ¶ 40.) Instead, Goode alleges he was terminated "in favor of retaining" two individuals, Martin Wegbreit and Christianne Queiroz. (*Id.* ¶¶ 38-39, 45-46.) Goode fails to allege any facts which allow a plausible inference that Wegbreit or Queiroz are similarly situated to Goode or that his position remained open to them.

With respect to Wegbreit, Goode alleges that he was a Caucasian, senior managing attorney "in charge of litigation services," with a similar workload to, but higher salary than, Goode. (Compl. ¶¶ 15-17.) These allegations do not allow an inference of similarity, but instead quite the opposite. *See Dickens v. MCI Telecomms. Corp.*, No. 94-2494, slip op. at 4 (4th Cir. Mar. 5, 1996) (per curiam) (holding that employees with the same job title but different responsibilities were not similarly situated). By asserting that Wegbreit headed litigation and was compensated at a higher rate than Goode, it is logical to conclude that Wegbreit had different, indeed higher-ranking, responsibilities than

Goode. Litigation is a broad category under which several of Goode's own duties such as "representing clients in civil matters" and "advising clients" could be encompassed. (Compl. ¶ 13.) It follows that because Wegbreit was *in charge* of litigation, and Goode had responsibilities *related to* litigation, the two were not similarly situated. Merely having the same job title does not establish that Goode and Wegbreit were "similar in all relevant respects." *Haywood*, 387 F. App'x. at 359-60 (explaining that an exact match is not required but comparators must have enough common features for a meaningful comparison) (citations omitted). Further, Goode does not allege that after his termination his position remained open to Wegbreit. He simply alleges that CVLAS retained Wegbreit "in the same capacity and at the same salary." (Compl. ¶ 5.) This suggests Wegbreit continued in the same position that he had before Goode's termination.

With respect to Queiroz, Goode alleges that she was a "non African American (Latino) [sic] female" attorney. (Compl. ¶¶ 39, 46.) According to the Complaint, Queiroz's hours were reduced while her salary remained unchanged, and the Court infers that this occurred after Goode's termination. (*Id.*) Goode alleges no other facts related to Queiroz's responsibilities, nor does he allege that Queiroz was similarly situated to him. These bare allegations support no inference that Goode and Queiroz were similarly situated. It also cannot be inferred from these facts that Queiroz replaced Goode or that his position remained open to her. Since Goode does not identify any similarly situated employees outside the protected class who received different treatment from him, he fails to plausibly establish the final element.

Because Goode alleges, at least in part, that his termination was part of a workforce reduction, he could satisfy the fourth element of his race discrimination claim by alleging facts to show CVLAS "did not treat . . . race neutrally when making its decision." *Causey*, 162 F.3d at 802 (citation omitted). Goode does not set forth facts which give rise to such an inference. Goode concedes that Executive Director Dickinson offered him a position to continue supervising the pro bono hotline. (Compl. ¶ 31.) Eventually, Goode and four other African-American employees were terminated from CVLAS due to the budget shortfall. (Compl. ¶23.) Goode mentions four other employees at CVLAS: Wegbreit (Caucasian), Queiroz (Latina), and two unidentified "Caucasian female[]" lawyers (Compl. ¶¶ 15, 30, 39). While Wegbreit and Queiroz maintained employment after Goode's termination, there is no allegation as to whether or not the two unidentified women kept their jobs. These allegations do little more than identify traits of various employees, and they fail to raise a logical inference that any connection existed between Goode's race and his termination.

In sum, Goode fails to allege sufficient facts supporting his claim that his termination was the result of unlawful discrimination, regardless of whether he proceeds under *McDonnell Douglas* or a theory of direct discrimination. Accordingly, Counts I and II are dismissed without prejudice.

## B. Age Discrimination Claim

To establish a claim of age discrimination under the ADEA, the first three elements are the same as those for a racial discrimination claim: membership in a protected class, satisfactory job performance, and adverse employment action. *Causey,*

162 F.3d at 802 (citation omitted).  In an age discrimination claim, the fourth element requires that a plaintiff be replaced by someone outside the protected class with comparable qualifications. *Id.*  For reasons similar to his previous claims, Goode fails to state a claim for which he is entitled to relief under the ADEA.

With respect to the first three elements, the Court adopts its previous analysis and similarly finds that Goode has failed to sufficiently plead his satisfactory job performance at the time of his termination. *See supra* Parts III.A., III.A.1.  The fourth element requires the plausible inference that someone outside the protected class replaced Goode.[3] *See supra* Part III.A.2.  Goode does not allege he was replaced by anyone at all.  Instead, he acknowledges that his position and some of his job duties were eliminated, though he disputes the reasoning as to both.  (Compl. ¶¶ 40-41.)  These allegations establish that Goode was *not* replaced, let alone by someone outside the protected class.  Goode fails to allege sufficient facts that his termination resulted from age discrimination.  Accordingly, Count III is dismissed without prejudice.

## IV. CONCLUSION

In sum, the Court finds that Goode has failed to state a claim for unlawful discrimination under Title VII, 42 U.S.C. § 1981, and the ADEA.  Accordingly, Defendant's Motion to Dismiss is granted and the case is dismissed without prejudice.

---

[3] In comparison to his own age, Goode merely alleges that Wegbreit was "substantially younger" and Queiroz "much younger." (Compl. ¶¶ 16, 39.)

13

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: August 12, 2014
Richmond, Virginia